**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Omar Vallejo Dominguez, | No. CV-16-03242-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Macy's Retail Holdings Incorporated, et al., | |
| Defendants. | |

Plaintiff Omar Vallejo Dominguez ("Plaintiff") filed this action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2 (2012), against Defendants Macy's Retail Holdings, Inc. (hereinafter, for purposes of this Order only, "Defendant")[1], Famsa, Inc., Chase Bank, USA, N.A., and Synchrony Bank[2]. Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim, ("Defendant's Motion," Doc. 19). The Court now rules on Defendant's Motion.

**I.  BACKGROUND**

Between November 25 and December 1, 2015, Plaintiff obtained both his Equifax and Experian credit files. (Doc. 1 at ¶¶ 17, 18). These credit reports described Plaintiff's

---

[1] In a footnote, Defendant states that it "is not the proper party as it does not handle reporting of Macy's customers' credit accounts" and, instead, FDS Bank is the proper party. (Docs. 19 at 2 n.1; 26 at 2 n.1). However, because Defendant did not establish its argument for dismissal on this basis, the Court did not consider Defendant's statement in ruling on Defendant's Motion.

[2] Synchrony Bank has been dismissed with prejudice by stipulation of the parties. (*See* Doc. 31).

consumer credit account with Defendant as being "charged off."[3] (*Id.* at ¶¶ 9, 10, 17, 18). Around March 17, 2016, Plaintiff sent letters to Experian, Equifax, and Trans Union disputing the charge off. (*Id.* at ¶ 19). Although Plaintiff does not state the contents of these letters, Plaintiff does not appear to have disputed the accuracy of Defendant's charge-off designation but, rather, disputed the practice of reporting the charge off monthly, as opposed to just once. (*Id.* at ¶¶ 25–28, 32–33). Plaintiff alleges that his disputes were forwarded to Defendant. (*Id.* at ¶ 20). Despite Plaintiff's dispute, Defendant continued to monthly report the charge off on Plaintiff's consumer account. (*Id.* at ¶¶ 23, 24). Plaintiff alleges that no date was clearly attributable to the charge off, thus making it appear that Defendant was "charging off the account again, month after month." (*Id.* at ¶¶ 14, 15).

## II. SUBJECT MATTER JURISDICTION

The Court must raise issues concerning its subject matter jurisdiction, including Article III standing, *sua sponte*. *Biggs v. Best, Best & Krieger*, 189 F.3d 989, 998 n.7 (9th Cir. 1999). Article III standing is an "indispensable part" of a plaintiff's case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To demonstrate Article III standing, a plaintiff must show: "(1) an injury-in-fact, (2) causation, and (3) a likelihood that the injury will be redressed by a decision in the plaintiff's favor." *Human Life of Wash. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010) (quotations omitted).

An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 559–60 (citations and quotations omitted). In *Spokeo, Inc. v. Robins*, the Supreme Court further emphasized that "an injury in fact must be both concrete *and* particularized," even in the context of a statutory violation. 136 S. Ct. 1540, 1548 (2016).

An injury is particularized if it "affect[s] the plaintiff in a personal and individual

---

[3] Black's Law Dictionary defines "charge off" as "[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." *Charge Off*, *Black's Law Dictionary* (10th ed. 2014).

way," while an injury is concrete if it is "real, and not abstract." *Id.* (quotations and citations omitted). Both tangible and intangible injuries can be concrete. *Id.* at 1549. Within the realm of statutory rights, although Congress' judgment is "instructive and important, . . . Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.*

The distinction between a statute simply conferring a right-to-sue as opposed to designating an injury-in-fact for Article III standing purposes is particularly prevalent where the right is procedural rather than substantive. *Id.* at 1549–50. For example, in *Spokeo*, the defendant allegedly violated the FCRA by willfully failing to "follow reasonable procedures to assure maximum possible accuracy of consumer reports." *Id.* at 1545 (citing 15 U.S.C. § 1681e(b)). The FCRA authorizes "either 'actual damages' or statutory damages of $100 to $1,000 per violation, costs of the action and attorney's fees, and possibly punitive damages." *Id.* (citing 15 U.S.C. § 1681n(a)). While the Supreme Court rendered no opinion as to whether the at-issue procedural FCRA violation constituted a "concrete injury" sufficient to confer standing on the plaintiff, the Court indicated that some statutory violations could be sufficiently procedural or technical to fail the "concrete injury" requirement. *Id.* at 1550.

In *Strubel v. Comenity Bank*, the Second Circuit Court of Appeals (the "Second Circuit") interpreted *Spokeo* to mean "even where Congress has accorded procedural rights to protect a concrete interest, a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents *no material risk of harm* to that underlying interest." No. 15-528-cv, 2016 WL 6892197, at *5 (2d Cir. Nov. 23, 2016) (emphasis added). Applying this principle, the Second Circuit decided whether a plaintiff, suing for the violation of four procedural disclosure rights guaranteed by the Truth in Lending Act, alleged an injury-in-fact. *Id.*

The Second Circuit held that the plaintiff demonstrated a concrete injury in

response to the defendant's failure to provide notice that: "(1) certain identified consumer rights pertain only to disputed credit card purchases not yet paid in full[;] and (2) a consumer dissatisfied with a credit card purchase must contact the creditor in writing or electronically." *Id.* The Court held that these disclosure requirements "do not operate in a vacuum" but, rather, serve "to protect a consumer's concrete interest in 'avoid[ing] the uninformed use of credit,' a core object of the TILA." *Id.* (quoting 15 U.S.C. § 1601(a)). The Court noted that a creditor's failure to give such notice gives rise to a "'risk of real harm' to the consumer's concrete interest in the informed use of credit." *Id.* (citing *Spokeo*, 136 S. Ct. at 1549). Thus, the plaintiff's bare procedural allegations were enough to demonstrate the "concrete injury necessary for standing." *Id.*

However, the plaintiff failed to demonstrate a concrete injury resulting from the defendant's failure to provide notice pertaining to: (1) billing-error claims under automatic payment plans; and (2) the defendant's 30-day response obligations to reported billing errors. *Id.* at *6–7. As to the first notice, the plaintiff never alleged that she agreed to an automatic payment plan—and the defendant did not offer an automatic payment plan during the time at issue. *Id.* at *6. Thus, the plaintiff failed to allege a "material risk of harm" as a result of the defendant's nondisclosure of the information. *Id.* As to the second notice, the defendant's response obligation only arose upon a consumer's complaint of a billing error. *Id.* at *7. Because the plaintiff never had a reason to complain of a billing error, she could not show a concrete injury because she never had use for the information. *Id.*

The Second Circuit's reasoning was paralleled by the Eleventh Circuit Court of Appeals (the "Eleventh Circuit") in *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016). In *Nicklaw*, New York law provided a cause of action against a mortgagee who failed to timely file a certificate of discharge with a county once a mortgage was satisfied. 839 F.3d at 1000. The Eleventh Circuit held that the plaintiff failed to allege a concrete injury because:

> His complaint does not allege that he lost money because [the

>defendant] failed to file the certificate. It does not allege that his credit suffered. It does not even allege that he or anyone else was aware that the certificate of discharge had not been recorded during the relevant time period.

*Id.* at 1003. Thus, while the defendant's conduct could "form the basis of a cause of action in a court of New York," the plaintiff did not suffer "some harm or risk of harm from the statutory violation to invoke the jurisdiction of a federal court." *Id.*

Finally, the Eighth Circuit Court of Appeals (the "Eighth Circuit") used similar reasoning as the Second and Eleventh Circuits in *Braitberg v. Charter Communications, Inc.*, 836 F.3d 925 (8th Cir. 2016). In *Braitberg*, the plaintiff sued his former cable company under the Cable Communications Privacy Act, 47 U.S.C. § 551(e), for retaining his personally identifiable information for years after he cancelled his cable services. 836 F.3d at 927. The plaintiff argued that the defendant's mere violation of his statutory right constituted an injury-in-fact sufficient to establish Article III standing without a further allegation of an "actual injury" arising from the defendant's retention of his personal information. *Id.* at 928–29. The Eighth Circuit disagreed, noting that the plaintiff failed to allege that the defendant disclosed any information to a third party, that any outside party accessed the information, or that the defendant used the information in any way during the disputed period of time. *Id.* at 930. Thus, the Eighth Circuit held that the plaintiff lacked standing because he had identified "no material risk of harm from the retention; a speculative or hypothetical risk is insufficient." *Id.* at 930.

Here, Plaintiff alleges that the Defendant's practice of reporting a charge off month-after-month on Plaintiff's consumer credit files is potentially misleading to future lenders. (Doc. 1 at ¶¶ 9, 15). However, Plaintiff does not allege that any potential creditor was misled or that Plaintiff was denied credit based on Defendant's practices. Further, Plaintiff does not allege that Defendant's underlying charge off was inaccurate. Thus, while Plaintiff alleges that a charge off is a "derogatory piece of information that depresses one's credit score," Plaintiff does not allege that it is Defendant's allegedly

1  misleading reporting that has lowered Plaintiff's credit score.[4] Like the plaintiff in
2  *Braitberg*, Plaintiff has failed to allege any concrete harm besides Defendant's mere
3  violation of the FCRA. Thus, Plaintiff has not alleged an injury-in-fact, the Court lacks
4  subject matter jurisdiction over his claims.[5] However, because Plaintiff might be able to
5  make more concrete allegations, Plaintiff will be given an opportunity to amend.

6  **III.   CONCLUSION**

7        For the foregoing reasons,

8        **IT IS ORDERED** dismissing Plaintiff's action, without prejudice, because the
9  Court lacks subject matter jurisdiction over this case. The Clerk of the Court shall enter
10 judgment of dismissal for lack of jurisdiction, without prejudice, in 15 days if Plaintiff
11 fails to amend his Complaint as to all Defendants, including any defaulted Defendants
12 within 14 days of this Order. The default entered against Defendant Famsa, Inc.,
13 (Doc. 28), is vacated without prejudice.

14       **IT IS FURTHER ORDERED** denying Defendant's Motion to Dismiss Plaintiff's
15 Complaint (Doc. 19) as moot, without prejudice. Assuming Plaintiff files an amended
16 Complaint, all Defendants shall answer or otherwise respond to the amended Complaint
17 within 14 days of the filing of the amended Complaint.

18       Dated this 27th day of December, 2016.

*[signature]*
James A. Teilborg
Senior United States District Judge

---

[4] Indeed, it is unclear from the face of Plaintiff's Complaint whether he is alleging that he is harmed by a lowered credit score or the potential confusion caused to prospective lenders who "look beyond the simple credit score to judge whether a consumer meets the guidelines for a mortgage loan." (Doc. 1 at ¶ 15(c)).

[5] Because Plaintiff's allegations as against Defendant Macy's Retail Holdings are materially similar as against Famsa, Inc. and Chase Bank, USA, N.A., the Court's reasoning in finding no subject matter jurisdiction over Plaintiff's claims against Defendant Macy's Retail Holdings is the same as to all other Defendants.